ATTORNEYS FOR APPELLANTS
SAUNDRA S. AND DANIEL P. WAHL
Lawrence D. Newman
Newman & Newman, P.C.
Noblesville, Indiana

Scott L. Barnhart
Diana B. Smith
Keffer Barnhart LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
STATE OF INDIANA
Gregory F. Zoeller
Attorney General of Indiana

Michael G. Worden
Ian A.T. McLean
Deputy Attorneys General
Indianapolis, Indiana



FILED

Mar 15 2016, 2:42 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

---

No. 29S04-1510-CR-605

SAUNDRA S. WAHL,                                    *Appellant (Defendant),*

v.

STATE OF INDIANA,                                    *Appellee (Plaintiff).*

---

Appeal from the Hamilton Superior Court, No. 29D06-1309-FD-7824
The Honorable Gail Z. Bardach, Judge

---

On Transfer from the Indiana Court of Appeals, No.  29A04-1409-CR-418

---

No. 29S02-1510-CR-606

DANIEL P. WAHL,                                    *Appellant (Defendant),*

v.

STATE OF INDIANA ,                                    *Appellee (Plaintiff).*

---

Appeal from the Hamilton Superior Court, No. 29D06-1309-FD-7823
The Honorable Gail Z. Bardach, Judge

---

On Transfer from the Indiana Court of Appeals, No.  29A02-1409-CR-625

---

**Dickson, Justice.**

In light of the conduct of an alternate juror during jury deliberations, we reverse the defendants' convictions for Involuntary Manslaughter.[1]

The defendants Daniel and Saundra Wahl, a married couple, were each convicted of Involuntary Manslaughter following the death of a child on June 20, 2013 at their in-home day care facility in Hamilton County. Before the defendants were sentenced, one of the jurors e-mailed the trial judge describing the conduct of an alternate juror during the jury's deliberations. Based on the e-mail, the defendants filed a motion for a mistrial, which the trial court denied. Following the defendants' sentencing, the defendants filed a motion to correct error again seeking a mistrial and supported by a sworn affidavit on the alternate juror's participation in deliberations. The affidavit alleged that "after the jury began deliberations, the alternate juror immediately began to involve himself in the deliberations and began taking over the deliberations by leading discussions." Appellant's App'x at 117. Even after being informed by other jurors not to participate in the deliberations, the alternate juror manipulated physical evidence (the working parts of a baby gate) and repeatedly replayed a portion of the DVD that was in evidence, with ever-increasing volume, until all jurors were giving it their attention. The trial court also denied the motion to correct error.

The defendants appealed, arguing that there was insufficient evidence to sustain their convictions, that the trial court erred when it declined to grant a mistrial due to juror misconduct, that their sentences were inappropriate, and that the trial court erred in ordering restitution. The Court of Appeals affirmed in separate opinions. Wahl v. State, 36 N.E.3d 1147 (Ind. Ct. App. 2015); Wahl v. State, 36 N.E.3d 1163 (Ind. Ct. App. 2015). We granted transfer and now consolidate these cases. Finding that the defendants' motion for mistrial due to juror misconduct

---

[1] The materials in these consolidated appeals are essentially the same. Citations to the appendices and briefs refer to the filings in Saundra Wahl's case, 29S04-1510-CR-605.

should have been granted, we reverse the convictions.[2]

In Ramirez v. State, we emphasized that certain juror misconduct is presumed to prejudice a defendant because "[a]n impartial jury is the cornerstone of a fair trial, guaranteed by the Sixth Amendment and Article 1, Section 13 of our Indiana Constitution."  7 N.E.3d 933, 936 (Ind. 2014).  In the present case, the resolution of the defendants' request for a mistrial based on a claim of juror misconduct is governed by the following standard:

> Defendants seeking a mistrial for suspected jury taint are entitled to the presumption of prejudice only after making two showings, by a preponderance of the evidence: (1) extra-judicial contact or communications between jurors and unauthorized persons occurred, and (2) the contact or communications pertained to the matter before the jury.  The burden then shifts to the State to rebut this presumption of prejudice by showing that any contact or communications were harmless.

*Id.* at 939 (internal citations omitted).[3]  The defendants, however, argue that Ramirez does not apply here because the misconduct in Ramirez occurred during trial, while the misconduct in this case occurred during jury deliberations, not trial.  But Ramirez is not limited only to in-trial juror misconduct.  Rather, it applies whenever "[d]efendants seek[] a mistrial for suspected jury taint," regardless of when the alleged jury taint occurred.  *Id.*  Furthermore, several of the cases Ramirez examines involve alleged juror misconduct during deliberations.  *See, e.g.,* Henri v. Curto, 908 N.E.2d 196, 200-04 (Ind. 2009); Griffin v. State, 754 N.E.2d 899, 900-01 (Ind. 2001); Hall v. State, 796 N.E.2d 388, 396 (Ind. Ct. App. 2003), *trans. denied*.

The State argues that the defendants have not carried their initial burden because the affidavit outlining the alternate juror's actions is "not permissible evidence for challenging the verdict" under Indiana Evidence Rule 606(b).  Appellee's Br. at 15.  Under that rule, "[d]uring an inquiry into the validity of a verdict . . . a juror may not testify about any statement made or incident that occurred during the jury's deliberations . . . ." Ind. R. Evid. 606(b)(1).  But one of the rule's exceptions allows a juror to "testify about whether . . . an outside influence was improperly brought to bear on any juror . . . ."  *Id.* at 606(b)(2).  As this Court has held, "an

---

[2] Because the juror misconduct issue is dispositive, we decline to review the defendants' other arguments.

[3] This two-part standard applies except "in egregious cases where juror conduct fundamentally compromises the appearance of juror neutrality," in which case "trial courts should skip [the] two-part inquiry, find irrebuttable prejudice, and immediately declare a mistrial." Ramirez, 7 N.E.3d at 939.

alternate is an 'outside influence' for purposes of Indiana Evidence Rule 606(b)." Henri, 908 N.E.2d at 203 (citing Griffin, 754 N.E.2d at 903). We find the juror's affidavit admissible to challenge the verdict.

The assertions in the affidavit are sufficient to trigger the Ramirez presumption.  In addition to showing both extra-judicial contact and communications between jurors and the alternate juror, it also showed that "the contact or communications pertained to the matter before the jury." Ramirez, 7 N.E.3d at 939.  As the State notes, "communications to the jury by an alternate juror during deliberations have been held to constitute extra-judicial communication." Appellee's Br. at 13 (citing Griffin, 754 N.E.2d at 903 ("An alternate is not, of course, a member of the jury . . . .")).  The trial court correctly instructed the jury that "[t]he alternate juror will be with you in the jury room but is not permitted to participate in your deliberations or verdicts." Appellant's App'x at 66.  Here, the alternate juror "immediately began to involve himself in the deliberations" including the manipulation of physical evidence and a DVD.  Appellant's App'x. at 117.  As the trial court noted, the "contact between the jurors and an unauthorized person (the alternate) . . . . did pertain to the matter before the jury . . . ." *Id.* at 86.  The assertions in the affidavit showing extra-judicial contact and communications between the jurors and the alternate juror, combined with showing that these pertained to the matter before the jury, were sufficient to give rise to the presumption of prejudice.

Because the Ramirez presumption of prejudice applies, the burden "shifts to the State to rebut this presumption of prejudice by showing that any contact or communications were harmless." Ramirez, 7 N.E.3d at 939.  For the State to show harmlessness under Ramirez, it must prove that the defendants were convicted by an impartial jury.  The State must show that the jury was impartial because the Constitutional right to an impartial jury is "so basic to a fair trial that [its] infraction can never be treated as harmless error." Riggs v. State, 809 N.E.2d 322, 328 (Ind. 2004) (quoting Gray v. Mississippi, 481 U.S. 648, 668, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987)).  If the State is able to demonstrate that a jury was impartial, the presumption of prejudice is rebutted and the contact or communications can be treated as harmless. *See* Weisheit v. State, 26 N.E.3d 3, 16 (Ind. 2015) (finding harmless error when "over half of the jurors" were not exposed to the outside influence and the remaining jurors "stated that it had no

effect on their ability to serve impartially"); <u>Caruthers v. State</u>, 926 N.E.2d 1016, 1021 (Ind. 2010) (noting that "courts have a duty to ensure an impartial jury").

The State argues that the alternate juror's participation is harmless because the defendant "fails to demonstrate that a fair trial was unlikely because of the alternate juror's misconduct." Appellee's Br. at 16. But once the presumption of prejudice arises, it is the State who must rebut the presumption by showing harmlessness. Here, the State essentially asserts only that the alternate juror's participation with the jury diminished after being advised by other jurors not to participate, and that the jurors confirmed their verdict was unanimous.[4] The facts presented in the affidavit do not establish jury impartiality, and the State presents no other grounds to satisfy its burden to show that the jury remained impartial despite the presumed prejudice. The State has thus failed to rebut the presumption of prejudice, and when "the State does not rebut the presumption, the trial court must grant a new trial." <u>Ramirez</u>, 7 N.E.3d at 939. We reverse the defendants' convictions and remand for a new trial.

The juror's affidavit in this case established by a preponderance of the evidence that the alternate juror's participation in jury deliberations was an external influence that pertained to the case. Under <u>Ramirez</u>, these showings result in a presumption of prejudice to the defendants. Because the State has not rebutted the presumption by showing that the jury was nevertheless impartial, a new trial is required. We reverse the convictions and remand for retrial or further proceedings consistent with this opinion.

Rush, C.J., and Rucker and David, JJ., concur.
Massa, J., concurs in part and dissents in part with separate opinion.

---

[4] The jury, however, was not individually polled when it returned the verdict. Appellant's App'x at 73. Even if such individual polling had occurred, the trial court was not yet aware of the alternate juror's actions so it would not have "immediately investigate[d] suspected jury taint by thoroughly interviewing jurors collectively and individually, if necessary." <u>Ramirez</u>, 7 N.E.3d at 940.

**Massa, J., concurring in part and dissenting in part.**

As far as we can tell from the incomplete record, the Wahls are getting a new trial because the jury viewed *properly admitted evidence* sent with them to the jury room, improperly emphasized by an alternate's words, gestures and facial expressions. And we grant this relief without knowing if deliberations were actually affected. We should know more before ordering this result.

I concurred in result only in <u>Ramirez</u>, believing that the United States Supreme Court had cogently addressed identical issues relating to juror misconduct, and that its reasoned opinions were consistent with prior Indiana precedent: for "garden-variety juror misconduct," such as "alternate jurors being present in the jury room during deliberations," the burden should remain with the defendant "to show that the misconduct prejudiced his trial and he is therefore entitled to a new one." <u>Ramirez v. State</u>, 7 N.E.3d 933, 944 (Ind. 2014) (Massa, J., concurring in result) (citing <u>United States v. Olano</u>, 507 U.S. 725, 730 (1993)). A majority of this Court disagreed, instead finding that a presumption of prejudice arises—irrespective of the actual facts on the ground—when the evidence of misconduct meets two conditions, regardless of degree: "(1) extra-judicial contact or communications between jurors and unauthorized persons occurred, and (2) the contact or communications pertained to the matter before the jury." <u>Ramirez</u>, 7 N.E.3d at 939.

A mere two weeks after crafting this new legal standard (and long before the advance sheet of <u>Ramirez</u> had been published), the jury returned a guilty verdict in these cases. And just three weeks after that, one of the jurors e-mailed the trial judge to report misconduct by an alternate.[1] This Court now grants the Wahls a new trial, finding that since this alternate's misconduct

---

[1] The e-mail noted, among other things, that when rebuked for his conduct in the jury room, the alternate "let out a big sigh, rolled his eyes and shook his head." Court's Ex. 1.

technically satisfied the <u>Ramirez</u> test,[2] the burden shifted to the State to present proof positive that the misconduct was harmless (i.e., did not impact jury impartiality), which the State failed to do. And while the majority does not state it expressly, the only possible way for the State to meet that burden would be to subpoena and/or obtain affidavits from the entire jury, individually confirming that they remained impartial during deliberations despite the misconduct. See <u>id</u>. at 940–41 (stating that if the misconduct is discovered prior to the verdict, the "trial court[] must immediately investigate suspected jury taint by thoroughly interviewing jurors collectively and individually, if necessary," and further confirming that juror testimony as to impartiality is admissible and may be credited); Slip op. at 3–5, n.4 (affirming these holdings in <u>Ramirez</u> and further clarifying that when the presumption of prejudice arises due to a juror's affidavit, the State cannot satisfy its burden by arguing that the affidavit does not in fact demonstrate prejudice). Conversely, it stands to reason that if the burden remained with the defendant to show prejudice based on this misconduct (as is the case in federal court, <u>see</u> <u>Olano</u>, 507 U.S. at 740 (declining to "presume prejudice" based on presence of alternate juror at deliberations)), he would have to present that same testimonial evidence as to the jurors' *lack* of impartiality resulting from the misconduct.

Thus at its core, today's decision holds that when a credible concern arises as to jury impartiality after its service is complete, the only viable remedy is to ask the jurors themselves whether they remained impartial during deliberations. The remainder of our recent bright-line burden-shifting rule only determines whether the State or the defendant bears responsibility for issuing the relevant subpoenas. I therefore believe the <u>Ramirez</u> approach, when applied to this case, merely serves to obfuscate "the ultimate inquiry," as identified in <u>Olano</u>: "Did the intrusion affect the jury's deliberations and thereby its verdict?" 507 U.S. at 739. We simply don't know

---

[2] The majority relies predominately upon the juror's affidavit filed with a motion to correct error in reaching this conclusion (slip op. at 2, 4), but it does not address that this juror also repeatedly informed both the alternate and the other jurors that the alternate was to have no part in deliberations. In my view, this tends to mitigate the implication that the alternate had a prejudicial impact, as the jurors were well aware of their obligations despite the misconduct.

the answer to that question—and we never will, given today's mechanistic application of <u>Ramirez</u> to this quite possibly harmless misconduct by the alternate. It's one thing to apply it when, for instance, a juror uses his phone to "perform[] an internet search on the reliability of blood tests." <u>See</u> <u>Bisard v. State</u>, 26 N.E.3d 1060, 1069 (Ind. Ct. App.) (applying the <u>Ramirez</u> presumption, though finding it overcome), <u>trans. denied</u>, 32 N.E.3d 238 (Ind. 2015). It's quite another when an alternate turns on the DVD player and picks up other exhibits in the jury room after being told to be quiet.

Accordingly, I concur in the Court's decision to reverse the trial court's denial of the Wahls' motion for a mistrial, but dissent as to the grant of a new trial. <u>Ramirez</u> clearly held that the *trial court* has a duty to investigate jury taint by interviewing jurors when that suspected taint is discovered prior to the jury's verdict, 7 N.E.3d at 940, but said little-to-nothing with respect to the State's burden under its two-part test. Today's decision—in a significant clarification of the burden of proof—extends <u>Ramirez</u> to impose that same duty on the *State* in a post-conviction setting. The State should thus be given the opportunity to meet that burden before the court makes a determination on the merits. I would therefore remand for additional hearing on the Wahls' motion, so that every juror can actually *inform* the court as to the impact of the alternate juror's misconduct on their respective impartiality.

3